Filed 8/12/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063442 |
| v. | (Super. Ct. No. 13CF1341) |
| ERIC RYAN HAYDE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Lance P. Jensen, Judge. Reversed and remanded.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

Penal Code section 1170.91 is an ameliorative statute that allows veterans to seek resentencing based on mental health conditions related to their military service.[1] Although the trial court found Hayde was eligible for relief under the statute, it ruled he was not suitable for resentencing and denied his petition. Hayde contends that decision was an abuse of discretion, and we agree. Accordingly, we reverse the court's order and remand for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from this court's 2018 unpublished opinion affirming the judgment that led to Hayde's imprisonment:

"Hayde, who was about 46 years old, met Deanna Witham, who was retired, at church in November 2012. Over the next six months, they got to know each other well. Witham was building a basement and closet in her home, and Hayde helped with the construction. Hayde moved into Witham's home; he kept his apartment.

"Before she met Hayde, Witham was not interested in guns but a family member suggested she get one for self-protection. After she met him, Witham and Hayde went to a store and she bought a .38 special handgun. Before she bought the gun she researched guns on the Internet 'a little bit' and spoke with Hayde.

"In early 2013, Witham's nephew told her about an upcoming gun show in Portland, Oregon. In March 2013, Witham[, her nephew,] and Hayde drove to Portland for the gun show; Witham's intent was to buy ammunition. In preparation for the trip, Hayde gave Witham a list of ammunition to buy.

---

[1] All further statutory references are to the Penal Code.

"Witham and her nephew went to the first day of the gun show; Hayde was sick and did not go. Witham, who was about 72 years old, bought a Russian SKS rifle from an individual in the lobby for $1,000. She also bought ammunition from Hayde's list. Witham bought the rifle for protection because all she had was a small handgun.

"The next day, Hayde, Witham, and her nephew went to the gun show. Because she could not buy a gun at the show, Witham bought another rifle from a person outside of the gun show. Later that day, Witham purchased a small black handgun and ammunition from her sister.

"Hayde and Witham drove back to California and straight to Hayde's storage unit at Security Public Storage (SPS) in Brea. Witham had been to SPS with Hayde once before, but she did not have a key to the unit. While Witham sat in the car, Hayde put the two rifles and the ammunition in the storage unit. Witham did not want the rifles in her home until construction was finished. She did not know much about the guns she purchased, how to load them, or how to use them. She did know Hayde could not possess them because he was a convicted felon.

"About noon on April 23, 2013, Witham and Hayde went to the County of Orange Public Works department. Patrick Kinney, an Orange County Sheriff's Department (OCSD) investigator, and another investigator were waiting for them armed with a search warrant for the storage unit.[2]

---

[2] "How Kinney learned of this storage unit at SPS was happenstance. Because Witham was remodeling her home, she was in contact with County of Orange Code Enforcement. Witham called a code enforcement officer and left her a telephone message. But Witham did not hang up the telephone. Witham and Hayde then discussed guns. When the code enforcement officer listened to the telephone message, she heard the conversation about the guns. She referred the matter to the OCSD."

They interviewed Witham separately. Witham first denied knowing where the weapons she purchased were but later admitted Hayde put them in his storage unit. Witham initially denied knowing where the storage facility was located but later admitted it was in Brea and she had been there. They searched Hayde and found three sets of keys. He also had two driver licenses in his possession: one was in his name and had his picture, and the other also had his picture but showed the name of 'James Anderson.'

"Later that evening, Kinney and the other investigator executed a search warrant for storage unit F69 at the Brea SPS; Witham led them to the unit. Two of Hayde's [keys] opened the locks on unit F69. In unit F69, investigators found a Russian SKS rifle, an AK-47 rifle, a Romarm SAR-1 rifle, a Glock 9mm handgun, and a stun gun. They also found hundreds of ammunition rounds. None of the weapons were registered. At Hayde's residence, investigators found two .38 caliber handguns and ammunition.

"A couple days later, Hayde who had been arrested and was in jail, spoke with Witham. Witham told Hayde she met with and paid his attorney. When Witham said police went to the storage unit and found the guns, he said, 'I don't know what you're talking about. Don't say anything like that. Don't say anything more.' Hayde told her not to discuss the case and 'it's not my storage so don't.' Hayde asked Witham to do him a favor, 'do what you can and get those keys off my property. Okay?' He repeated that with respect to the storage unit, he did not know what she was talking about and 'None of that stuff was mine.'

"An SPS manager sent Kinney the rental agreement records for unit F69 (Agreement). The Agreement was signed February 25, 2013, and it showed the unit was rented to an individual named 'Bryan Becker.' Investigators ran the driver license number Hayde had provided SPS, but it

did not come back to an individual with that name." (*People v. Hayde* (Dec. 31, 2018, G055346) [nonpub. opn.].)

Following a jury trial in 2017, Hayde was convicted of three counts of possessing an assault weapon; two counts of possessing a large capacity magazine; and one count each of possessing a firearm as a felon, possessing ammunition as a felon, and possessing a forged driver's license to facilitate a forgery. (§§ 30600, subd. (a), 32310, 29800, subd. (a)(1), 30305(a)(1), 470b.) In a bifurcated proceeding, the trial court also found Hayde had suffered a prior strike conviction, based on a 1996 conviction for robbery. (§ 667, subds. (d) & (e)(1).)

The presentence probation report listed five aggravating circumstances: (1) Hayde's crimes involved planning; (2) they involved a large quantity of contraband; (3) he had numerous prior convictions of increasing seriousness; (4) he had served a prior prison term; and (5) his previous performance on probation had been unsatisfactory. No mitigating circumstances were listed in the report.

At the sentencing hearing, defense counsel invited the trial court to dismiss Hayde's prior strike conviction in the interest of justice pursuant to section 1385. In arguing for dismissal, counsel urged the court to consider that Hayde appeared to have serious drug issues and expressed his opinion that Hayde also suffered from mental problems. However, the court did not comment on those issues. Instead, it focused on Hayde's prior record, noting that following his prior strike conviction in 1996, he was convicted of assault and battery, possession of tear gas, and several misdemeanor offenses in 2007. And in 2009, he was convicted of a misdemeanor drug offense, although that conviction was later dismissed.

5

In light of Hayde's criminal record, the trial court denied his motion to dismiss his prior strike conviction and sentenced him to 20 years in prison for his crimes, which we hereafter refer to as Hayde's commitment offenses. That term consisted of 12 years (double the midterm) on one of the assault weapon counts, plus four years (double one-third the midterm) on each of the other two assault weapon counts. The sentences on the remaining counts were either ordered to run concurrently to that term or stayed pursuant to section 654. Based on Hayde's lengthy pretrial confinement, the trial court awarded him over eight years' worth of presentence custody credit.

In 2023, the Orange County Public Defender's Office filed a section 1170.91 petition for resentencing on Hayde's behalf. The petition included exhibits documenting Hayde's military service and his mental health treatment while incarcerated for his commitment offenses. In connection with the petition, Hayde also filed a handwritten letter with the court describing the major events in his life.[3]

These filings paint a grim picture of Hayde's childhood. Starting from a young age, he was physically and sexually abused by his adoptive parents, and after he was removed from their home, he was victimized the same way at a state-run orphanage. Those experiences left Hayde severely traumatized and alienated, but at the age of 19 he joined the Army and "found a new family," where he felt accepted.

_____

[3] All of those documents were ordered sealed by the trial court because they contain confidential information about Hayde's childhood and mental health history. On appeal, the parties filed redacted briefs for the same reason. However, the nature of Hayde's request for resentencing dictates that we disclose a certain amount of that confidential information. We have disclosed no more of that information than is necessary to adjudicate his appeal.

To avoid making waves in the Army, Hayde did not tell anyone about his childhood trauma or the enormous psychological burden he was carrying. However, one day while participating in a live-fire training drill with bullets whizzing over his head, Hayde started having flashbacks about his past abuse, and ever since then, he has been haunted by memories of his dreadful childhood. To mask those memories while he was in the Army, Hayde took to drinking and drugs. That led to him incurring several Article 15 violations,[4] and after 16 months of military service, he was discharged from the Army for unsatisfactory performance, although his discharge was nevertheless characterized as "honorable."

That was in 1987, when Hayde was 21 years. For the next three decades, Hayde's life was characterized by heavy drug addiction, intermittent suicide attempts, and occasional bouts of criminal activity until he was incarcerated for his commitment offenses in 2017. While in prison, Hayde began to receive mental health treatment for the first time. He reported having daily hallucinations, as well as "PTSD due to [his] history of significant childhood abuse and time that was served in the Army." Ultimately, he was diagnosed by prison health officials as having schizophrenia, bipolar disorder, major depressive disorder, and generalized anxiety disorder.

In addition to all this information, Hayde's resentencing petition included a letter confirming his eligibility for veteran services and multiple character references. It also included documentation regarding the many educational and self-help courses he has completed while in prison. However,

---

[4] Article 15 of the Uniform Code of Military Justice authorizes military commanders to impose disciplinary punishment on service members who commit minor offenses. (*Middendorf v. Henry* (1976) 425 U.S. 25, 31–32.)

at the outset of the hearing on his petition, the trial court stated it would not consider any of "the things defendant has done while incarcerated to better himself such as work, classes, courses, certificates, et cetera." Although the court stated such information might be relevant if Hayde were seeking relief on other grounds, it ruled his conduct while in prison "fall[s] outside the analysis for purposes of [a section] 1170.91 motion."

Defense counsel argued Hayde was eligible for resentencing because his mental disorders were related to his military service and those disorders were not considered at his original sentencing hearing. Defense counsel also alerted the trial court to several relatively new sentencing laws that expanded the discretion of sentencing judges, including a statute that created a presumption in favor of the lower term sentence when the defendant has experienced childhood trauma. (See § 1170, subd. (b)(6)(A), added by Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 695, § 5.1); see also §§ 1385, subd. (c), added by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) [in deciding whether to dismiss an enhancement in the interest of justice, the trial court must afford great weight to evidence showing the defendant's offense was connected to mental illness or childhood trauma]; and 654, subd. (a), as amended by Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1) [giving trial courts discretion to decide which sentence to stay when the defendant is convicted of multiple crimes based on the same act].) Defense counsel argued those laws would support imposition of a reduced term if the court determined Hayde was eligible for resentencing.

Defense counsel also pointed out that Hayde did not actually harm or threaten to harm anyone during the course of any of his commitment

8

offenses. And counsel reminded the court that Hayde, then age 57, had less than six months remaining on his sentence.[5]

The prosecutor acknowledged Hayde's childhood trauma was "well documented and extreme." But the prosecutor contended Hayde was not eligible for resentencing because his alleged mental disorders were caused by his childhood trauma, not by his military service.

The trial court did not see it that way. Describing Hayde's childhood as "a little house of horrors," the court recognized the evidence showed Hayde's childhood trauma caused "identifiable mental disorders" that predated his military service. The court also noted, however, that the written diagnosis Hayde received while incarcerated stated his mental health disorders were the result of both "childhood trauma and time in the military." The court therefore found there was a sufficient connection between those disorders and Hayde's military service to render him eligible for resentencing.

The trial court then turned from the eligibility issue to the suitability issue and whether the circumstances justified the court exercising its discretion to resentence Hayde to a lesser prison term. The court concluded they did not.

The court began its analysis by noting that it "does not find any evidence of a connection between" Hayde's mental health issues related to his

---

[5] Hayde was sentenced to 20 years in prison in 2017, but as noted above, he was awarded eight years' worth of presentence custody credit. In addition, his remaining 12 year term was subject to a fifty percent reduction based on his participation in educational programs while in prison. (See § 2933; *In re Reeves* (2005) 35 Cal.4th 765, 768.)

military service and his "commission of the numerous offenses in this case." It continued:

"[T]he fact [Hayde] may be suffering from a qualifying condition as a result of his military service [is only] one mitigating factor, along with all the other mitigating and aggravating factors in the case. A review of the entire record available to the [original sentencing] court . . . provides this court with sufficient direct and/or circumstantial evidence to reasonably infer that the aggravating factors outweigh any mitigating factors that may have been presented at the time of sentencing. Therefore, the court declines to exercise its discretion to resentence [Hayde].

"The court also considered any and all discretionary and/or ameliorative laws and [has] given weight to factors that may apply to [Hayde's] case . . . and will not exercise its discretion or find factors that would warrant this court to apply such options to resentence [Hayde].

"[Hayde's] previously imposed sentence shall remain and the motion is denied."

After denying the petition for resentencing, the trial court paused to thank Hayde for his service and said: "[W]hile the court can't apologize for the actions of others, the court was saddened and continues to be saddened to hear about his childhood history. And when I previously described it as 'a little shop of horrors,' that was not a sarcastic remark. Far from that. That was a remark that barely touched the tip of the iceberg of, sadly, what [Hayde] had to go through."

The court also told Hayde, "The records of your accomplishments while incarcerated to improve yourself are commendable and are an example to all who may currently be incarcerated in the state that you can do things

10

that will make you a better person." With that, the court wished Hayde luck and concluded the proceedings.

## DISCUSSION

Hayde contends the trial court erred by declining to resentence him to a lower term. For the reasons explained below, we agree.

## I.

### THE SENTENCING SCHEME

Since section 1170.91 became effective in 2015, "California law has required sentencing courts to consider, as mitigating factors weighing in favor of a low-term determinate sentence, any trauma, substance abuse, and mental health problems caused by a defendant's service in the United States military." (*People v. Estrada* (2020) 58 Cal.App.5th 839, 841.)

Although the original version of the statute was prospective only, section 1170.91 now provides that any service member currently serving a felony sentence "who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service may petition for a recall of sentence . . . to request resentencing if the circumstance of suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service was not considered as a factor in mitigation at the time of sentencing." (*Id.*, subd. (b)(1).)

Upon receiving such a petition, the trial court must first make an eligibility determination by assessing whether the petitioner has satisfied the basic criteria for resentencing, i.e., whether the petitioner may be suffering from a qualifying disorder from his military service and that circumstance

11

was not considered as a mitigating factor at his original sentencing hearing. (§ 1170.91, subd. (b)(3).)

If the trial court finds the petitioner is eligible for resentencing, it "may, in the interest of justice," resentence him to a lesser term. (§ 1170.91, subd. (b)(3).) That decision is discretionary, but not without limits. In deciding whether a defendant is suitable for resentencing, the court may not act in an arbitrary or capricious manner or rely on improper considerations. (See *People v. Panozo* (2021) 59 Cal.App.5th 825, 837.) Rather, it must base its decision on an individualized assessment of the defendant, his offenses, and the public interest. (*Ibid.*)

The trial court must also keep in mind that section 1170.91 is "a remedial statute designed to . . . ameliorate the effects of a potentially excessive sentence for criminal defendants who may suffer from qualifying mental health conditions or substance abuse as a result of their military service." (*People v. Sherman* (2023) 91 Cal.App.5th 325, 331.) Indeed, the primary purpose of the statute is to ensure that veterans who have experienced trauma related to their military service are provided a meaningful opportunity for sentencing mitigation. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill. No. 1209 (2021–2022 Reg. Sess.) as amended May 19, 2022, p. 1.)

## II.

### ANALYSIS

Hayde contends the trial court abused its discretion by relying on improper considerations and failing to consider pertinent factors in deciding not to resentence him. We agree.

In finding Hayde unsuitable for resentencing, the court cited the lack of evidence showing Hayde's commitment offenses were related to the

12

mental disorders he allegedly suffered as a result of his military service. The Attorney General rightfully concedes, however, that resentencing under section 1170.91 turns on whether the defendant's mental disorders are related to his military service, not whether those disorders were related to his criminal conduct. (*Id.*, subd. (b)(1).) Therefore, the trial court's reliance on the lack of a demonstrated nexus between Hayde's mental disorders and his commitment offenses was error. (See *People v. Coleman* (2021) 65 Cal.App.5th 817, 824 [section 1170.91 "does not require the petitioner to allege that the qualifying condition actually contributed to the commission of the crime"].)

The trial court compounded this error by refusing to consider another factor that *was* highly relevant to the suitability question: Hayde's exemplary rehabilitation efforts during his lengthy incarceration.

As noted above, the trial court announced at the outset of the hearing that it would not take into consideration Hayde's efforts to better himself while in prison, even though the court acknowledged his accomplishments were "commendable" and "an example" to anyone incarcerated "that you can do things that will make you a better person." The court believed Hayde's postconviction conduct fell "outside the analysis for purposes of" resentencing under section 1170.91. This, too, was error.

Resentencing decisions necessarily encompass a wide range of factors, including "'any pertinent circumstances which have arisen since the prior sentence was imposed.'" (*People v. Yanaga* (2020) 58 Cal.App.5th 619, 625 (*Yanaga*), quoting *Dix v. Superior Court* (1991) 53 Cal.3d 442, 460.) A defendant's conduct in prison has logical bearing on whether the interests of justice favor granting or denying his petition for resentencing. "'Consideration of postconviction behavior is not an act of

mercy, grace or forgiveness . . . . Rather, consideration of such evidence merely strengthens the court's ability to fit the punishment to the crime *and* the particular defendant.'" (*Yanaga, supra*, at p. 626, quoting *People v. Warren* (1986) 179 Cal.App.3d 676, 692.) Thus, justice is better served by requiring trial courts to consider the defendant's prison behavior—whether good or bad—in making resentencing decisions. (*Yanaga, supra*, at pp. 627–628.)[6]

We conclude that, by basing its decision in part on an irrelevant factor and refusing to consider a highly relevant factor, the trial court abused its discretion in denying resentencing for Hayde. (See generally *People v. Superior Court (Romero)* (1996)13 Cal.4th 497, 530–531 [in considering the interests of justice, a sentencing court abuses its discretion when it relies on improper factors while ignoring pertinent ones].)

Other aspects of the trial court's ruling further support our conclusion that the trial court abused its discretion and Hayde is entitled to resentencing in the interests of justice.

In rejecting Hayde's suitability for resentencing, the trial court placed considerable emphasis on the circumstances that existed at the time of Hayde's original sentencing decision. Indeed, the court determined Hayde

---

[6] *Yanaga* illustrated this point by positing a hypothetical in which, unlike Hayde, "the defendant has made no effort to rehabilitate himself [while incarcerated]. He has joined a violent, racist prison gang, fought with other inmates, and flouted prison rules." (*Yanaga, supra*, 58 Cal.App.5th at p. 628.) In that situation, *Yanaga* determined, it would only make sense for the trial court to consider the defendant's poor prison conduct in deciding whether the interests of justice warranted a reduction in his sentence upon resentencing. (*Ibid.*) By the same logic, it only makes sense for the trial court to consider Hayde's good prison conduct in deciding whether the interests of justice warrant a reduction of his sentence.

was unsuitable for resentencing because, even if it added his military-related disorders into the mix, the aggravating factors presented at his original sentencing hearing still outnumbered the mitigating factors.

This backward looking analysis ignores the relevance and importance of what has transpired in the years after the sentencing. The record of the original sentencing hearing may be a logical place for a trial court to start when considering a petition for resentencing. But postconviction factors such as changes in the law and how the defendant has conducted himself in prison are important too, because they reflect contemporary attitudes toward punishment and offer insight into the defendant's current prospects for rehabilitation. (See *Dix v. Superior Court, supra,* 53 Cal.3d at pp. 460–463 [discussing the general principles governing resentencing decisions].

In rendering its decision, the trial court made a sweeping, conclusory statement that it had "considered any and all discretionary and/or ameliorative laws and given weight to factors that may apply to the defendant's case, including, but not limited to, . . . section 1170, 1170.01, 1016.7, 236.24, 1385, and 654 and will not exercise its discretion or find factors that would warrant this court to apply such options to resentence the defendant." But it did not identify what factors arising from the new ameliorative statutes it had "given weight to" or explain how it had weighed them or why it concluded they were outweighed by other factors. At minimum, it is difficult to understand why the court, having acknowledged the horrific and extreme abuse Hayde suffered as a child, would dismiss the impact of section 1170, subdivision (b)(6)(A), which created a *presumption* in favor of the lower term sentence when the defendant has experienced childhood trauma. Because Hayde's 20 year sentence was not based on lower

15

terms, the presumption of section 1170 would be a strong factor in favor of resentencing.

Moreover, the fact that Hayde received a 20 year prison sentence for committing nonviolent, possession-related offenses appears to have been largely overlooked at the hearing on his petition. The trial court did correctly note that part of Hayde's sentence was attributable to his prior strike conviction for robbery. That conviction, however, is nearly three decades old. Without minimizing the gravity of Hayde's offenses, when we compare his sentence to the punishment prescribed for offenses significantly more serious than those Hayde has ever committed, we cannot avoid the conclusion that his original sentence of 20 years was at least somewhat excessive. (See, e.g., §§ 264, subd. (c)(1) [maximum term for forcible child rape is 13 years]; 193, subd. (a) [maximum term for voluntary manslaughter is 11 years]; 213, subd. (a)(1)(A) [maximum term for home invasion robbery is nine years]; 204 [maximum term for mayhem is eight years]; 451, subd. (c) [maximum term for arson is six years].) It bears repeating that section 1170.91 is "designed to allow the trial court to ameliorate the effects of a *potentially excessive sentence* for criminal defendants who may suffer from qualifying mental health conditions or substance abuse as a result of their military service." (*People v. Sherman, supra,* 91 Cal.App.5th at p. 331, italics added.)

Furthermore, at the time the trial court considered Hayde's resentencing petition in 2023, he was 57 years old and had only about six months remaining on his 20-year term, meaning he had already served over 95 percent of an excessive sentence. Adding these factors into the equation further underscores our conclusion that Hayde was a prime candidate for resentencing.

16

The Attorney General argues that, even if the trial court misunderstood or misapplied its discretion under section 1170.91, reversal is not required because the record clearly indicates the court would have reached the same decision had it properly understood and applied its discretionary authority under the statute. We cannot agree. This is not a case where the trial court made a minor mistake that was rendered immaterial by virtue of all of the other legitimate considerations it cited in support of its decision. Rather, the record shows the trial court prejudicially abused its discretion by considering irrelevant factors, ignoring relevant ones, and failing to address factors that show the interests of justice dictate that Hayde be resentenced. This cannot be brushed aside as harmless error.

One final point. In challenging the trial court's ruling, Hayde claims the court acted out of personal distaste for the resentencing scheme set forth in section 1170.91. Having carefully reviewed the record, we find no support for that claim. To the contrary, it appears from the lengthy transcript of the hearing the court made a good-faith effort to apply a relatively new resentencing statute. Although we conclude the trial court erred in refusing to resentence Hayde, we have no reason to doubt its ability to fairly and justly do so upon remand.

## DISPOSITION

The trial court's order denying Hayde's postjudgment petition is reversed, and the matter is remanded for resentencing under section 1170.91, subdivision (b).


GOODING, J.

WE CONCUR:


DELANEY, ACTING P. J.


SCOTT, J.